(80 South. 794)

BLACK v. SLOSS-SHEFFIELD STEEL & IRON CO. (6 Div. 802.)

(Supreme Court of Alabama. Feb. 6, 1919.)

1. APPEAL AND ERROR ⊜⟶907(3)—PRESUMPTIONS—ADVERSE RULINGS ON PLEADINGS—FAILURE TO FILE BILL OF EXCEPTIONS.

Where there was no nonsuit on court's refusal to sustain plaintiff's demurrers to defendant's pleas and a trial was had on the merits, it will be presumed on appeal, in the absence of a bill of exceptions containing the evidence, that affirmative charge given for defendant was given because of failure in evidence to support complaint.

2. APPEAL AND ERROR ⊜⟶907(3) — PRESUMPTIONS—BILL OF EXCEPTIONS—EVIDENCE IN SUPPORT OF PLEAS.

Where there was a trial on the merits following court's overruling of plaintiff's demurrers to defendant's pleas, and an affirmative charge for defendant, it will be presumed, in the absence of a bill of exceptions showing the evidence, that there was no evidence offered in support of defendant's pleas.

3. APPEAL AND ERROR ⊜⟶1031(2)—PRESUMPTIONS—PREJUDICIAL ERROR.

It will be presumed, on appeal, in the absence of a bill of exceptions, that there was no prejudicial error as to ruling on demurrer to pleas.

Mayfield and Sayre, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by Artie Black, administratrix, against the Sloss-Sheffield Steel & Iron Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Frank S. White & Sons, of Birmingham, for appellant.

Tillman, Bradley & Morrow, of Birmingham, for appellee.

THOMAS, J. The suit was for personal injury resulting in the death of plaintiff's intestate.

The case was tried in the court below upon its merits. The learned trial judge gave the affirmative charge in writing at defendant's request. The appeal was on the record alone. There was no nonsuit; no bill of exceptions showing what evidence was introduced at the trial.

Counts 1 and 2, under the common law, were to the effect that the roof or material composing the roof of the mine was so defective that the "proper propping thereof would not prevent its falling, and, as a proximate consequence thereof, the roof fell on plaintiff's intestate, inflicting upon him injuries from which he died."

Count 3 averred, among other things:

That intestate's death "was proximately caused by the wantonness of defendant's servant or agent, while acting within the line and scope of his duty under his employment, and that said wantonness consisted in this, that the servant or agent of the defendant intrusted by it, under his said employment with the duty of providing a place for intestate to work, wantonly placed him to work where the roof of the mine over him was of such unsubstantial and rotten material that it would not be prevented from falling by properly propping the same, all of which said servant or agent of the defendant well knew, and knew that to put intestate to work in said place would likely or probably result in his death or serious bodily harm to him."

Count 4 was framed under the "Defect" subdivision of the Employers' Liability Act. Code, § 3910, subd. 1.

Appellant's counsel observed of the pleading and questions presented by the appeal:

"There are four counts in the complaint. The second went out on demurrer, about which no complaint is made. Demurrers were sustained to all pleas to the third. This leaves for consideration the action of the court in overruling demurrers to pleas to the complaint consisting of the first and fourth counts, and overruling demurrers assailing pleas as answers to the fourth count. These pleas are numbers 2, 3, 11, 12, and 13."

[1-3] It has been held that where the court has erred in its rulings on pleadings and there was no nonsuit, but the trial was had on the merits, "and the instructions given and refused were set up as a part of the record proper," and these indicated that the rulings were prejudicial, the judgment will be reversed, notwithstanding there was no bill of exceptions. Henderson v. T. C. I. & R. R. Co., 190 Ala. 126, 67 South. 414; Pratt v. B. R. L. & P. Co., 191 Ala. 638, 68 South. 151; Lloyd v. Cent. of Ga. Ry. Co., 77 South. 237;[1] Beiser v. W. O. W., 74 South. 235, 237;[2] W. O. W. v. Ward, 78 South. 824;[3] Walker, Stipp & Johnson v. Fletcher (App.) 77 South. 56;[4] Mitchell v. State, 14 Ala. App. 104, 71 South. 982; Wilson v. Owens H. & M. Co., 14 Ala. App. 467, 70 South. 956. In the instant case, no nonsuit having been taken because of adverse rulings on the pleadings, and having proceeded to trial on the merits, the general affirma-

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 200 Ala. 694.     [2] 199 Ala. 41.     [3] 201 Ala. 446.     [4] 16 Ala. App. 213.

tive charge, given for defendant on its written request, being the only charge requested and given, was, for aught that the record discloses, given because of the failure of evidence to support the complaint. The same presumption would be indulged as to no evidence being offered in support of any of defendant's pleas, and no prejudicial error as to any ruling on demurrer to pleas. Harrell v. Hooks (App.) 80 South. 145.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., concur.

MAYFIELD, J. (dissenting). At first, I thought I would concur in the opinion and decision, believing then that only a question of practice was involved, and that it was settled by the decisions cited by Justice THOMAS.

On reflection and further consideration, however, I find that the decision not only involves a question of practice, but it also involves and denies litigants in this court their clear statutory rights, and probably their constitutional rights. I further find that the decisions of this court cited do not authorize this decision. However, there are dicta and argumentative clauses in the opinion, which support this holding; but there is no decision or result in any of those cases which is authority for this decision and result. For example, in the case of Henderson v. T. C. I. Co., 190 Ala. 126, 67 South. 414, upon which all the others are based, the decision and result was diametrically opposite to the decision and result in this case.

The rulings on the pleadings in that case were considered and held erroneous, and the judgment reversed. Here, the court declines to consider them, and affirms the judgment. Both appeals were on the record only, and contained no bill of exceptions. Both records contained the charges because the statute now directs that they shall be recorded. It may be some of the decisions of the Court of Appeals, cited, support the decision in this case; if so, they are not binding on this court. There are hundreds of decisions of this court holding contrary to the decision in this case—all of which are overruled or disregarded without any reference to them.

The statutes of this state give a right of appeal in this case, and the right to assign errors. The assignment of errors in this court is appellant's complaint, and, on this complaint, the Constitution of this state, (section 140) and the statutes above referred to make it the duty of this court to decide the appeal, and say whether or not there is error in the record. The statutes authorize the appellant to take a bill of exceptions, and have it made a part of the record if he desires; but they do not require him to do so. He is given the absolute and unqualified right to appeal on the record proper if he so chooses; and this court, in my opinion, ought not to decline to consider his errors because he has no bill of exceptions. I do not believe this court has the constitutional or statutory authority, by rule or otherwise, to require appellants to take a bill of exceptions in order to have rulings on pleadings revised on appeal.

This court in effect says to appellant, "We will not consider your assignments of error, as to rulings on demurrer, because you have taken no bill of exceptions to show that the rulings are injurious."

Appeals have been taken to this court on the record only, ever since this court was created, and have been considered and decided just as if there was a bill of exceptions; no one ever thought that a bill of exceptions was necessary or even proper, if the only errors complained of related to rulings on demurrer, until this court adopted some new rules a few years ago. Can a rule of court deprive a litigant of his constitutional or statutory rights? Can a rule of court overrule hundreds of decisions of courts construing statutes for a hundred years? It seems to me there has never been a decision of this court that caused as much surprise to the bar and litigants of the state as this one will cause. I do not believe there is a solitary member of the bar in this state, even counsel for appellee in this case, who will not be surprised by it—though they may agree with it.

As I said above, there are dicta of this court to support this decision, but no decision; while there are scores, if not hundreds of decisions, deciding contrary to it.

Let us see if this decision does not deprive appellant of his constitutional rights. Section 140 of the Constitution places the appellate jurisdiction of this court "under such restrictions and regulations" as the Legislature may prescribe, which are not repugnant to other provisions of the Constitution, and a proviso contained in that section.

The Legislature has given the absolute right of appeal in this case. See section 2387 of the Code. This statute says, in terms, that the appeal is "as matter of right."

Section 5370 of the Code provides as follows:

"The party against whom a judgment on demurrer or plea in abatement is rendered may plead over as a matter of right, without waiving his privilege of assigning such judgment as error in an appellate court, unless he has subsequently had the benefit sought by the demurrer or plea in abatement upon the trial of other equivalent issues."

Prior to the above statute, it was the law of this state that pleading over, or going to trial after judgment on demurrer, was a

waiver of that error; then the only remedy to revise the error was to take a nonsuit if the party was a plaintiff, or if a defendant to suffer a judgment final in consequence thereof, and then appeal, and have this court revise the error.

This statute was intended to change the law and practice in this respect, and it has ever been construed as so doing until this decision.

In construing this section in the case of Chestnut v. Tyson, 105 Ala. 149, 168, 16 South. 723, 728 (53 Am. St. Rep. 101), Mc-Clellan, J., in speaking of an amended pleading after demurrer, said:

"The compulsory amendment by which this change was wrought did not deprive the plaintiff of the right to insist on appeal that that ruling was erroneous and to have the judgment reversed on account of it, unless it affirmatively appears that he was not prejudiced by the action. Williams v. Ivey, 37 Ala. 242; Phœnix Ins. Co. v. Moog, 78 Ala. 284 [56 Am. Rep. 31]."

Thus the statute reads, and thus it has been construed and readopted.

The decision in this case in effect repeals the statute, and overrules all of the many cases, probably hundreds of them, which have held that the parties did have the absolute right to plead over after judgment on demurrer, and to have those judgments reviewed, unless he subsequently had had the benefits sought by the demurrers "upon the trial of other equivalent issues," and to have the judgment reversed on account of the erroneous ruling on the demurrer, "unless it affirmatively appears that he was not prejudiced by that action." The decision in this case says, "You must take a nonsuit on account of adverse rulings on demurrer, or you must affirmatively show, by matter dehors the record proper, that is by bill of exceptions, that you were injured by the ruling on demurrer, or we will not review such rulings on demurrer."

I submit this, in effect, nullifies the statute, and will tend to, if it does not, drive every plaintiff, who desires to review adverse rulings on demurrer, to take a nonsuit with a bill of exceptions; thereby inviting, if not necessitating, two, three, or more appeals in every case before the merits of the case can be tried. The declared purpose of the statute was to prevent several appeals, and to allow all the questions to be raised and settled on one appeal; but the decision drives the litigant back to the old practice of several appeals.

The statute gives the litigant the option of pursuing either practice; but the decision tends to, if not drives him back to the original practice.

The decision also places a burden and duty on appellant, of which the statute relieved him, or said was not necessary. The decision says, "You must show that the erroneous ruling on demurrer damaged you, or the court will not consider the assignments of error which the statute expressly authorizes you to assign." The statute said it must be considered unless it appears that appellant had subsequently had the benefit of the demurrer on the trial by other equivalent issues.

I submit that the court ought not by a rule or decision, one or both, deprive an appellant of these rights so conferred on him by statutes, which statutes are expressly authorized by the Constitution.

I also submit that if it were a question of policy, and not of law, the practice and procedure of the statute is preferable to the one adopted by this decision and rule of this court. The statute tends to reduce the number of appeals, and to expedite the disposition of cases, while the practice adopted by the decision tends to increase the number of appeals and to prolong litigation.

I contend that, if the law be conceded to be that this appellant must affirmatively show injury, he has done so—if it be conceded that the judgments on demurrer, which he assigns, are erroneous, and this, of course, must be conceded before the question of injury arises. I cannot conceive how it is possible to show injury on account of judgments on demurrer, otherwise than by showing that these interlocutory judgments were erroneous, and that the trial resulted in a judgment final against him.

Surely, he is not required to show that, but for these erroneous rulings, the final judgment on the trial would, or probably would, have been for him. If so, that would be requiring the impossible of him. It is an old trite, but true, saying that, "God only knows what will be the verdict of a petit jury."

How is it possible for an appellant, who appeals on the record proper only, to show injury except to show a judgment against him and erroneous rulings, which probably induced or led to the final judgment? The clerk certifies that the transcript before this court is a true and correct copy of all the records and proceedings in the trial court; consequently nothing else can be shown if the appeal is on the record only. While the law authorizes him to take a bill of exceptions and to make it a part of the record, it does not require him to do so in order to avail of his statutory rights of appeal. Has the court the power to make him take a bill of exceptions, or decline to consider his assignments of error unless he does take a bill of exceptions? It may be that all the other rulings except these of which he complains were in his favor, or induced by him; in which case he would have no objection or exception, much less a bill thereof. In such case he could not take that which was not

attainable. Here, again, this decision may require him to do the impossible.

SAYRE, J. I concur in the opinion of MAYFIELD, J.